*Buono v. Tyco Fire Prods., LP*

# United States Court of Appeals
# for the Second Circuit

August Term 2022
Argued: May 25, 2023
Decided: August 24, 2023

No. 22-754

FRANKLIN BUONO,

*Plaintiff-Appellant*,

v.

TYCO FIRE PRODUCTS, LP,

*Defendant-Appellee.*\*

On Appeal from the United States District Court
for the Southern District of New York

Before:    WESLEY, PARK, and PÉREZ, *Circuit Judges*.

Franklin Buono was severely injured at work when a tank filled with compressed air exploded.    Buono brought common-law claims

---

\* The Clerk of Court is respectfully directed to correct the caption accordingly.

for strict liability and negligence against Tyco Fire Products, LP ("Tyco"), which sold the tank to Buono's employer. Tyco moved for summary judgment, arguing that Buono's claims are preempted under the Hazardous Materials Transportation Act of 1975 ("HMTA"), 49 U.S.C. § 5125(b)(1). The district court (Halpern, *J.*) held that the claims are preempted and granted Tyco summary judgment.

We agree. The HMTA expressly preempts nonfederal laws "about" certain subjects related to the transportation of hazardous materials in commerce. As relevant here, the HMTA preempts state laws that are (1) "about . . . the . . . marking" of a "container . . . that is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce," and (2) "not substantively the same as a provision" of the HMTA or a regulation promulgated thereunder. 49 U.S.C. § 5125(b)(1). Both requirements are satisfied here. First, the tank was "marked . . . as qualified for use in transporting hazardous material," and Buono's common-law claims are "about" the "marking" of Tyco's tank. Second, Buono's common-law claims cannot be deemed "substantively the same" because they would impose duties beyond the HMTA and associated regulations. The HMTA thus expressly preempts Buono's common-law claims, and the judgment of the district court is **AFFIRMED**.

---

MARIE DUSAULT (Kenneth Fromson, *on the brief*), Finkelstein & Partners, LLP, Newburgh, NY, *for Plaintiff-Appellant Franklin Buono*.

JAMES KIRKPATRICK (Daniel Whiteley, *on the brief*), Williams & Connolly LLP, Washington, DC, *for Defendant-Appellee Tyco Fire Products, LP*.

---

PARK, *Circuit Judge*:

Franklin Buono was severely injured at work when a tank filled with compressed air exploded. Buono brought common-law claims for strict liability and negligence against Tyco Fire Products, LP ("Tyco"), which sold the tank to Buono's employer. Tyco moved for summary judgment, arguing that Buono's claims are preempted under the Hazardous Materials Transportation Act of 1975 ("HMTA"), 49 U.S.C. § 5125(b)(1). The district court (Halpern, *J.*) held that the claims are preempted and granted Tyco summary judgment.

We agree. The HMTA expressly preempts nonfederal laws "about" certain subjects related to the transportation of hazardous materials in commerce. As relevant here, the HMTA preempts state laws that are (1) "about . . . the . . . marking" of a "container . . . that is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce," and (2) "not substantively the same as a provision" of the HMTA or a regulation promulgated thereunder. 49 U.S.C. § 5125(b)(1). Both requirements are satisfied here. First, the tank was "marked . . . as qualified for use in transporting hazardous material," and Buono's common-law claims are "about" the "marking" of Tyco's tank. Second, Buono's common-law claims cannot be deemed "substantively the same" because they would impose duties beyond the HMTA and associated regulations. The HMTA thus expressly

3

preempts Buono's common-law claims, and we affirm the judgment of the district court.

## I. BACKGROUND

A.    Factual Background

In early 2016, Franklin Buono started working at Oprandy's Fire & Safety Inc. ("Oprandy's") in Middletown, New York. Oprandy's "services, inspects, and repairs fire extinguishers, compressed air tanks, and fire suppression systems."    Joint App'x at A-36.   Several weeks after starting at Oprandy's, Buono agreed to help his coworker Chris Foust test a "Kitchen Knight" fire-suppression system, which was developed by a subsidiary of Tyco.

The Kitchen Knight system consists of spray nozzles connected to a cylinder containing a pressurized wet chemical agent.   When activated, the system releases the agent through the nozzles to suppress a fire.   To test the integrity of the Kitchen Knight system, a servicer may conduct a "balloon test."   *Id.* at A-38.   This involves replacing the cylinder with a "test tank" containing compressed air and attaching balloons to the nozzles.   Then the servicer releases the compressed air through the system.   If the balloon expands, then "the servicer knows that the pipes are intact."   *Id.*   If not, then the fire-suppression system has malfunctioned.

The test tank Foust and Buono used was a DOT type 4BW steel cylinder, which was marked with the text "DOT 4BW 225 M453."[1] *Id.* at A-49; *see* 49 C.F.R. § 178.61.   The test tank was manufactured by

_____

[1] The parties agree that the marking indicates that the tank was manufactured in compliance with U.S. Department of Transportation requirements for the transportation of hazardous materials in commerce.

Worthington Industries and sold to Tyco, which in turn sold it through a subsidiary to Oprandy's as a safety accessory for its Kitchen Knight system. As is its practice, Tyco did not fill the test tank with compressed air before shipping it to Oprandy's, so Foust hooked it up to another system to fill it with compressed air. Buono checked if the tank's pressure gauge moved and listened for air entering the tank. But he did not see the gauge moving or hear any noise, so he assumed no air was entering. While Foust was "tinkering" with the tank, he "had to push down on the valve on [top] of the cylinder with a screwdriver and then turn the valve on the long metal piece to let the air in." Joint App'x at A-47 to -48. The test tank then ruptured, and shrapnel hit several fire extinguishers, causing a "huge explosion," in which Buono lost one of his legs. *Id.* at A-142 to -143.

B.    Procedural Background

Buono filed a complaint in New York state court against numerous Defendants, including Tyco, seeking damages. Buono raised New York common-law claims for negligence based on manufacturing or design defect, breach of warranty, and strict products liability. Defendants removed the action to federal court under 28 U.S.C. § 1441(b) based on diversity jurisdiction. In an amended complaint, Buono realleged the same common-law claims and added a negligence claim based on failure to warn. Following pretrial conferences and the beginning of discovery, the parties stipulated to the dismissal without prejudice of claims and cross-claims against two Defendants but not the claims against Tyco. Tyco then filed a third-party complaint against Buono's former employer Oprandy's, seeking defense, indemnification, and contribution.

5

After discovery, Tyco moved for summary judgment, principally arguing that the HMTA preempts Buono's common-law claims. At oral argument on Tyco's motion, Buono voluntarily dismissed with prejudice his claims against Tyco for breach of warranty and negligence based on design or manufacturing defect. Buono's only remaining claims against Tyco are for strict products liability and negligence based on failure to warn.

The district court granted Tyco's motion for summary judgment and dismissed the complaint, holding that § 5125(b)(1)(E) "unambiguously preempts any New York common law duties." Special App'x at SPA-7. First, it stated that there was "no dispute that the tank was qualified for use in transporting hazardous material in commerce under federal law" and that Buono's claims were "about" an enumerated subject. *Id.* at SPA-8. Second, it found that Buono's common-law claims for "negligent failure to warn" and "strict liability based on a failure to warn" would "impose upon Defendant . . . duties beyond those required by federal law." *Id.*

Buono timely appealed.

## II.  DISCUSSION

Buono contends that the HMTA does not preempt his common-law claims. He argues: (1) 49 U.S.C. § 5125(b)(1)(E) does not encompass "labeling" claims, and (2) 49 U.S.C. § 5125(b)(1) applies only if a defendant is actually subject to the HMTA or associated regulations. Under Buono's reading, Tyco may not raise a preemption defense because its conduct at issue here was not covered by the HMTA. We disagree. Our inquiry begins and ends with the text of 49 U.S.C. § 5125(b)(1)(E), which expressly preempts Buono's claims.

6

A. Legal Standards

Under the Supremacy Clause, "the Laws of the United States" made "in Pursuance" of the Constitution "shall be the supreme Law of the Land . . . [the] Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. A corollary of the Supremacy Clause is the doctrine of preemption, under which Congress may "exercise its constitutionally delegated authority to set aside the laws of a State." *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 30 (1996). When federal law preempts nonfederal law, "the Supremacy Clause requires courts to follow federal, not state, law." *Id.*; *see Gibbons v. Ogden*, 22 U.S. (9 Wheat) 1, 82 (1824) ("[T]he act of Congress . . . is supreme; and the law of the State, though enacted in the exercise of powers not controverted, must yield to it."). In other words, the preempted law is "ousted." *Ass'n of Int'l Auto. Mfrs. v. Abrams*, 84 F.3d 602, 607 (2d Cir. 1996); *see also Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977) ("[W]hen Congress has unmistakably ordained that its enactments alone are to regulate a part of commerce, state laws regulating that aspect of commerce must fall." (cleaned up)).

Preemption is "a matter of statutory interpretation," *Cantero v. Bank of Am., N.A.*, 49 F.4th 121, 130 (2d Cir. 2022), and we must "ascertain the intent of Congress," *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280 (1987). Although "the categories of preemption are not rigidly distinct," *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 n.6 (2000) (cleaned up), we have recognized that preemption generally comes in one of three forms:

> (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where

7

Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives.

*Figueroa v. Foster*, 864 F.3d 222, 227-28 (2d Cir. 2017) (cleaned up); *see Guerra*, 479 U.S. at 280-81.

As relevant here, when "a federal law contains an express preemption clause, we focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 594 (2011) (cleaned up); *accord In re WTC Disaster Site*, 414 F.3d 352, 372 (2d Cir. 2005). We "do not invoke any presumption against pre-emption" when a statute contains an express-preemption clause. *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016). But if "a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008).

"We review *de novo* the grant of summary judgment on the preemption question." *Liberty Mut. Ins. Co. v. Donegan*, 746 F.3d 497, 502-03 (2d Cir. 2014).

B.    Analysis

The question presented is whether 49 U.S.C. § 5125(b)(1)(E) preempts Buono's common-law claims for strict liability and

8

negligence.   We begin "with the language of the statute itself, and that is also where the inquiry should end, for the statute's language is plain."   *Franklin Cal. Tax-Free Tr.*, 579 U.S. at 125 (cleaned up).

1.   *Express Preemption Under the HMTA*

Congress enacted the HMTA in 1975 to "protect the Nation adequately against the risks to life and property which are inherent in the transportation of hazardous materials in commerce."   Pub L. No. 93-633, § 102, 88 Stat. 2156, 2156, (1975) (codified as amended at 49 U.S.C. § 5101).   To that end, the HMTA authorizes the Secretary of Transportation to designate materials as hazardous and to prescribe appropriate Hazardous Materials Regulations ("HMR"), 49 C.F.R. §§ 100-185.   *See* 88 Stat. at 2156-57 (codified as amended at 49 U.S.C. § 5103).   To promote regulatory uniformity, the HMTA contains several distinct preemption provisions that displace nonfederal laws about hazardous-materials transportation.   *See* 49 U.S.C. § 5125.

At issue is § 5125(b)(1), which provides that state law "about any of the following subjects, that is not substantively the same as a provision of this chapter, a regulation prescribed under this chapter, or a hazardous materials transportation security regulation or directive issued by the Secretary of Homeland Security, is preempted."   It then lists the following five subjects:

(A) the designation, description, and classification of hazardous material.

(B) the packing, repacking, handling, labeling, marking, and placarding of hazardous material.

(C) the preparation, execution, and use of shipping

documents related to hazardous material and requirements related to the number, contents, and placement of those documents.

(D) the written notification, recording, and reporting of the unintentional release in transportation of hazardous material and other written hazardous materials transportation incident reporting involving State or local emergency responders in the initial response to the incident.

(E) the designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing a package, container, or packaging component that is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce.

49 U.S.C. § 5125(b)(1). Section 5125(b)(1) is an express-preemption clause because it "expressly directs that state law be ousted" if certain conditions are satisfied. *Ass'n of Int'l Auto. Mfrs.*, 84 F.3d at 607; *accord Roth v. Norfalco LLC*, 651 F.3d 367, 375 (3d Cir. 2011).

In interpreting this provision, we "identify the domain expressly pre-empted." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 517 (1992). Section 5125(b)(1) contains two requirements for preemption. First, there is a subject-matter requirement—the nonfederal law must be "about" one of the subjects enumerated in § 5125(b)(1)(A)–(E). At issue here is § 5125(b)(1)(E), which encompasses "the designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing a package, container, or packaging component that is represented, marked, certified, or sold as qualified for use in transporting hazardous

10

material in commerce."  Second, there is a substantive-similarity requirement—the nonfederal law must not be "substantively the same as a provision" of the HMTA or an associated regulation.  49 U.S.C. § 5125(b)(1).

2.  *Express Preemption of Buono's Claims*

Buono's common-law claims for strict liability and negligence satisfy both requirements for preemption under § 5125(b)(1)(E).

a.  Subject-Matter Requirement

Buono concedes that "the tank was qualified for use in transporting hazardous material in commerce under federal law," as it retained DOT markings at all relevant times.  *See* Special App'x at SPA-4 to -5 & n.4, SPA-8; Appellant's Br. at 24.  The only remaining question under § 5125(b)(1)'s subject-matter requirement is whether Buono's claims are "about" any of the enumerated subjects—namely, "the designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing a package, container or packaging component."  49 U.S.C. § 5125(b)(1)(E).  To answer this, we look to the "gravamen" of Buono's complaint, looking past any attempt at artful pleading and instead focusing on whether the claims involve the preempted subjects.[2]  *See Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 635 (2012).

Buono has two claims—negligence and strict liability—and both are "about" subjects included in § 5125(b)(1)(E).  First, the negligence claim concerns the "marking" of "a package, container, or

_____

[2] Buono advances so-called "labeling" claims, but as discussed *infra*, we look to the allegations in Buono's complaint to determine what claims are raised, not how Buono has styled those claims on appeal.

11

packaging component." 49 U.S.C. § 5125(b)(1)(E). The complaint alleges:

> [T]he defendants had a duty to warn the general public . . . that the . . . cylinder tank in question could not be operated in a reasonably foreseeable manner without causing substantial harm and resulting injury to plaintiff, including the risk that the tank would explode. . . . [D]efendants failed in their duty to warn that foreseeable use of the . . . cylinder tank would cause substantial harm and resulting injury, including the risk that the tank would explode. . . . [T]he failure to warn by defendants directly and proximately caused substantial injury to plaintiff.

Am. Compl. ¶¶ 232-234. The negligence claim is thus based on Tyco's alleged failure to warn about the dangers of the test tank, specifically the danger of overfilling. *See* Restatement (Third) of Torts: Products Liability ("Restatement") § 2(c) (Am. L. Inst. 1997) (A product is defective "when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, . . . and the omission of the instructions or warnings renders the product not reasonably safe."); *Mulhall v. Hannafin*, 45 A.D.3d 55, 58 (1st Dep't 2007) ("To succeed on their failure-to-warn claim, plaintiffs were required to prove that the product did not contain adequate warnings and that the inadequacy of those warnings was the proximate cause of the injuries. . . . [A] manufacturer's duty is to warn only of those dangers it knows of or are reasonably foreseeable.").

12

The word "marking" in § 5125(b)(1)(E) encompasses Buono's failure-to-warn claim. The ordinary meaning of a "marking" is a "letter, character, symbol, etc.; a system of notation," *Marking*, Oxford English Dictionary (2023), or an "arrangement, pattern, or disposition of marks," *Marking*, Merriam-Webster Dictionary (2023). Under the ordinary meaning, a "marking" would encompass written "notations" or "symbols" on the exterior of a "container" warning about known dangers. More specifically here, the HMTA governs the highly regulated transportation of hazardous materials and, in the HMR, the Department of Transportation has defined a "marking" as a "descriptive name, identification number, instructions, *cautions*, weight, specification, or UN marks, or combinations thereof . . . on outer packagings of hazardous materials." 49 C.F.R. § 171.8 (emphasis added). "Cautions" plainly encompass warnings.

The DOT has adopted a similar interpretation of "marking" that encompasses warnings about dangerous uses of cylinders, including overfilling. In 2020, the Pipeline and Hazardous Materials Safety Administration ("PHMSA"), a DOT agency, adopted a rule imposing certain "marking" requirements on DOT 4B, 4BA, 4BW, and 4E cylinders related to "tare weight/mass weight and water capacity." *See* Hazardous Materials: Miscellaneous Amendments Pertaining to DOT-Specification Cylinders, 85 Fed. Reg. 85380, 85393 (Dec. 28, 2020). PHMSA adopted "this marking requirement" to "prevent[] overfilling incidents, which can result in explosions and fatalities." *Id.* In addition, DOT and PHMSA have issued guidance providing examples of HMTA "markings," including "DANGER" above skull and crossbones, "HOT," "OVERPACK," and "INHALATION HAZARD." *See* Pipeline & Hazardous Materials Safety Admin., U.S. Dep't of Transp., Hazardous Materials Markings, Labeling and

13

Placarding Guide 1 (June 3, 2021) ("Guide") [https://perma.cc/VB7D-BV86].   A "marking" thus encompasses "instructions or warnings" about the potential dangers of a cylinder, including the danger of overfilling.   Restatement § 2(c); *see Kurns*, 565 U.S. at 634-35.

We conclude that Buono's negligence claim based on Tyco's failure to warn is "about" the "marking" of a hazardous-materials package, container, or packaging component and is under "the exclusive domain of the HMTA."   *Roth*, 651 F.3d at 377.   Buono's negligence claim thus satisfies § 5125(b)(1)(E)'s subject-matter requirement.

Second, Buono's strict-liability claim is also about the "marking" of "a package, container, or packaging component.   49 U.S.C.   § 5125(b)(1)(E).   Before the district court, "the parties appear[ed] to construe" this claim "solely on th[e] basis" of a "failure to warn," Special App'x at SPA-2 n.2, and the district court deemed any design-defect theory to be abandoned.   *Id.*   Construing the strict-liability claim as being based on a failure to warn, which Buono does not protest on appeal, his claim would concern a "marking" under § 5125(b)(1)(E) as explained above.   Buono's strict-liability claim is thus "about" "marking" under § 5125(b)(1)(E), satisfying the subject-matter requirement.

We reject Buono's arguments to the contrary.   He argues that the omission of "labeling" under § 5125(b)(1)(E) implies that his claims are not preempted for substantially the same reasons.   Buono relies on the textual difference between § 5125(b)(1)(E), which preempts nonfederal claims about "marking" a "package, container, or packaging component . . . transporting hazardous material in commerce," and § 5125(b)(1)(B), which preempts nonfederal claims

14

about "labeling" *and* "marking" of "hazardous material." Buono reasons that the omission of "labeling" in § 5125(b)(1)(E) implies that any claims about the labeling of a container are thus not preempted under that provision. These arguments fail.

First, the "gravamen" of Buono's complaint alleges failure-to-warn claims within the meaning of "marking" under 49 U.S.C. § 5125(b)(1)(E). Although Buono characterizes his complaint as raising "labeling" claims, we look to the essence of his complaint as pled. *See Kurns*, 565 U.S. at 635.

Second, Buono's argument by negative implication is unpersuasive. We have noted that "[w]here there is such an express clause defining a law's preemptive reach, application of the interpretive principle of *expressio unius est exclusio alterius* may warrant the conclusion that Congress did not intend to preempt matters beyond the clause's explicit scope. . . . [P]reemption is restricted to the terms of that provision." *Ass'n of Int'l Auto. Mfrs.*, 84 F.3d at 607. Buono notes that § 5125(b)(1)(B) includes "labeling" and "marking," while § 5125(b)(1)(E) includes only "marking," from which he infers that Congress intended to omit "labeling" claims from § 5125(b)(1)(E)'s preemptive scope and to differentiate "labeling" and "marking." But this is irrelevant because his common-law claims are not about "labeling."

The ordinary meaning of a "label" is "a slip (as of paper or cloth) inscribed and affixed to something for identification or description" that is "written or printed . . . to furnish identification or other information." *Label*, Merriam-Webster Dictionary (2023). The technical meaning of "label" is also narrow, identifying the specific contents of a container, packaging, or the like. The

15

Department of Transportation has observed that a label may "indicate" that a "package" "contains a hazardous material." 49 C.F.R. § 171.8; *see also* Common Law Tort Claims Concerning Design and Marking of DOT Specification 39 Compressed Gas Cylinders, 77 Fed. Reg. 39567, 39568 n.2 (July 3, 2012) (noting a "hazard class warning label" may be placed on a "filled cylinder" to indicate the presence of, for example, "nonflammable gas" (capitalization altered)). The Department of Transportation has also provided examples of "labels" in guidance, including "Class 2" labels for "Gases" or "Class 3" labels for "Flammable Liquid." *See* Guide, *supra* at 14, at 2.

Buono's negligence and strict-liability claims do not relate to Tyco's failure to warn about the contents (or anticipated future contents) of the test tank. Rather, Buono alleges that Tyco "failed in [its] duty to warn that foreseeable *use* of the . . . cylinder tank would cause substantial harm and resulting harm, including that the risk the tank would explode." Am. Compl. ¶ 233 (emphasis added). Even accepting § 5125(b)(1)'s negative inference, Buono's claims are not "about" Tyco's alleged failure to label the contents of the test tank but rather about its alleged failure to warn users about the dangers of overfilling.

b.    Substantive-Similarity Requirement

Buono's common-law claims are based on state laws that are not "substantively the same" as federal requirements under the HMTA and HMR. 49 U.S.C. § 5125(b)(1). As an initial matter, Buono's common-law claims are nonfederal "requirement[s] of a State" within the meaning of 49 U.S.C. § 5125(b)(1). *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008) ("[A] provision pre-empting

state 'requirements' pre-empt[s] common-law duties."). The HMR defines "substantively the same" to mean that "the non-Federal requirement conforms in every significant respect to the Federal requirement. Editorial and other similar *de minimis* changes are permitted." 49 C.F.R. § 107.202(d); *see Roth*, 651 F.3d at 377 (adopting the HMR's interpretation of "substantively the same").

Buono does not allege what, if any, provision of the HMTA or HMR is "substantively the same" as his common-law claims. In any event, those claims would impose conditions beyond federal law, so they are not "substantively the same." Specifically, a civil violation of the HMTA or HMR must be committed "knowingly," 49 U.S.C. § 5123(a), and a criminal violation must be committed "knowingly," "willfully," or "recklessly," *id.* § 5124(a). In contrast, Buono's common-law claims for negligence and strict liability based on Tyco's alleged failure to warn require a less culpable mental state and thus sweep more broadly than federal law. *See, e.g.*, *Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 297 (1992) ("[A] plaintiff may recover in strict products liability or negligence when a manufacturer fails to provide adequate warnings regarding the use of its product. A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its products of which it knew or should have known." (citations omitted)).

### 3. *Application of Substantive Requirements*

Buono advances an additional argument against preemption. He contends that Tyco is not subject to the substantive provisions of the HMTA and HMR, so the HMTA's "preemptive clauses do not cover this matter." Appellant's Br. at 28. This argument is unpersuasive.

17

The HMR contains "manufacturing" and "transportation-function" regulations, and Buono contends neither set of regulations applies labeling requirements to Tyco. First, although Tyco engaged in a "manufacturing" function by marking the test tank as qualified to transport hazardous materials, the manufacturing regulations "do not regulate the matter of labeling." *Id.* at 31. From this, Buono concludes that § 5125(b)(1)(E) does not preempt his "labeling" claim. Second, "labeling" is covered under the "transportation-function" regulations, but Tyco did not engage in any "pretransportation or transportation function." *Id.* at 32. Even if "labeling claims" are preempted under § 5125(b)(1)(B), "Tyco's use of the test tank as manufacture[r]/seller did not subject it to HMR labeling regulations," meaning Buono's "labeling claims are not preempted." *Id.* at 47. Third, under 49 C.F.R. § 173.29, the HMR "does not regulate the matter of labeling of empty packagings," and a qualifying empty package is removed "from the HMTA's sphere and preemption provision." *Id.* at 51, 54. We reject these arguments.

First, Buono's argument cannot be squared with the HMTA's text. Preemption under 49 U.S.C. § 5125(b)(1) does not depend on whether the HMTA or HMR actually regulates the defendant's specific conduct at a given time. As long as the subject-matter and substantive-similarity requirements are satisfied, a nonfederal claim is expressly preempted. Section 5125(b)(1)(E) contains no hint that preemption depends on whether a container is in transport or contains hazardous materials at a specific time.[3]

---

[3] Indeed, when Congress intends for preemption to depend on federal substantive requirements, it knows how to do so. For example, the HMTA's conflict-preemption provision requires courts to identify whether

18

In rejecting Buono's interpretation, we join the only other circuit court to rule on the issue. The Third Circuit has similarly declined to imply a predicate requirement for HMTA preemption that the HMTA or HMR actually regulate a defendant's particular conduct. In *Roth*, the plaintiff was injured while "unload[ing] a tank car of sulfuric acid," and he sued in federal court raising common-law design-defect claims. 651 F.3d at 373. Like Buono, Roth argued that the HMTA did not apply because, as the employee of a consignee, his "act of unloading" a "hazardous material that has reached its final destination" was not "'transport' in 'commerce'" under the HMR. *Id.* at 379. The Third Circuit rejected Roth's interpretation as "creative but wrong." *Id.* "Roth forgets that we need not look beyond the text of a statute unless its meaning is ambiguous," and § 5125(b)(1)'s requirements for preemption "could not be more clear." *Id.* "It is irrelevant what Roth was doing at the precise moment of his injury" because it "cannot be the case that the comprehensive design requirements erected by the HMTA cease to govern simply because the tank car was emptied of its contents days after its delivery." *Id.* at 380. Here too, we need not look beyond § 5125(b)(1)(E)'s text to hold that Buono's claims are expressly preempted.[4]

---

a nonfederal requirement would be irreconcilable or "an obstacle" to compliance with "a regulation prescribed under" the HMTA or associated regulation. 49 U.S.C. § 5125(a).

[4] Although 49 U.S.C. § 5125(b)(1) is unambiguous, we note that the PHMSA's interpretation of § 5125(b)(1) is consistent with our approach. First, in an adjudication, the PHMSA adopted *Roth*'s interpretation. Plaintiffs brought common-law products-liability claims against defendant AMTROL, arguing that the HMTA did not preempt their common-law claims because "the technician was not using the cylinder in a

Second, Buono conflates express preemption with substantive federal liability. The doctrine of preemption tells courts the source of law to apply. *See Barnett Bank*, 517 U.S. at 30 ("Did Congress, in enacting the Federal Statute, intend to exercise its constitutionally delegated authority to set aside the laws of a State? If so, the Supremacy Clause requires courts to follow federal, not state, law."). When federal law expressly preempts nonfederal law, the nonfederal law and any claims thereunder are ousted. *See Ass'n of Int'l Auto. Mfrs.*, 84 F.3d at 607 (noting an express-preemption clause "expressly directs that state law be ousted to some degree from a certain field").

A successful express-preemption defense under the HMTA thus ensures that a court does not impose certain *nonfederal* duties on the defendant, but express preemption does not depend on whether

transportation mode; he was simply using the cylinder as an end-user on the job after its journey had ended." 77 Fed. Reg. at 39569. Invoking the Third Circuit's decision in *Roth*, the PHMSA found the plaintiff's interpretation of § 5125(b)(1) "beside the point." *Id.* at 39570. The "'substantively the same as' preemption provision in 49 U.S.C. § 5125(b)(1)(E) must govern the 'adequacy of the cylinder' at all times that it is 'represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce,' and not just the period in time 'when it was used to transport hazardous material.'" *Id.*

Second, in promulgating a rule clarifying the applicability of the HMR to "loading, unloading, and storage" of hazardous materials, the PHMSA rejected another argument like Buono's. *See* Applicability of the Hazardous Materials Regulations to Loading, Unloading, and Storage, 70 Fed. Reg. 20018, 20024-25 (Apr. 15, 2005) (DOT "requirements apply at all times that the rail tank car is marked to indicate that it complies with DOT specification requirements, whether the car is empty or loaded," and "a non-Federal entity may impose requirements on DOT specification packagings only if those requirements are substantively the same as the DOT requirements.").

Congress or an agency has imposed *federal* duties on the defendant. Here, Tyco does not need to show that it is or may be held liable under the HMTA or HMR before raising an express-preemption defense under the HMTA. We conclude that the HMTA preempts Buono's claims, meaning his common-law claims are ousted, and federal law provides the source of law. Buono does not raise any federal claims, so we do not consider whether Tyco engaged in a "manufacturing" or "transportation" function or is subject to the empty-packaging provision.

## III. CONCLUSION

For the foregoing reasons, the district court correctly held that Buono's common-law claims are preempted under the HMTA. The judgment of the district court is thus affirmed.

21