Malerba v New York City Tr. Auth. (2024 NY Slip Op 04344)

Malerba v New York City Tr. Auth.

2024 NY Slip Op 04344

Decided on August 29, 2024

Appellate Division, First Department

RODRIGUEZ, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 29, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Anil C. Singh
David Friedman Julio Rodriguez III John R. Higgitt LlinÉt M. Rosado

Index No. 113520/09, 590461/12 Appeal No. 1790 Case No. 2023-04665 

[*1]Peter Malerba et al., Respondents,
v
New York City Transit Authority et al., Defendant-Respondents, E.A. Technologies/Petrocelli J.., LLC, Defendant, Ansul, Inc. et al., Defendants-Appellants.
Tyco Fire Products, LP Initially Sued Herein as Ansul Incorporated et al., Third-Party Plaintiffs-Appellants,
v
Ameron Global, Inc., Doing Business as Ameron Global Product Support, Third-Party Defendant-Respondent.

Defendant Tyco Fire Products LP (Tyco) appeals from an order of the Supreme Court, New York County (Suzanne J. Adams, J.), entered on or about September 11, 2023, which denied its motion for summary judgment dismissing plaintiffs' claims and any counterclaims or cross-claims against it.

Calinoff & Katz, LLP, New York (Robert A. Calinoff of counsel), and Williams & Connolly, Washington, DC (James W. Kirkpatrick of the bars of the District of Columbia and the State of Missouri admitted pro hac vice, of counsel), for appellants.
Weitz & Luxenberg, P.C., New York (Alani Golanski and Nicholas Wise of counsel), for Peter Malerba and Janet Malerba, respondents.
Anna J. Ervolina, Brooklyn (Yolanda L. Ayala of counsel), for New York City Transit Authority and Metropolitan Transit Authority (MTA), respondents.
London Fischer LLP, New York (Brian A. Kalman of counsel) for Ameron Global, Inc., respondent.

RODRIGUEZ, J. 

The main issue in the present appeal is whether the federal Hazardous Materials Transportation Act (HMTA) preempts plaintiffs' claims sounding in defective design and failure to warn. Since the HMTA's express preemption provision encompasses state law claims "about" "the designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing [of] a package, container, or packaging component that is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce" (49 USC § 5125 [b] [1] [E]), plaintiffs' claims against defendant Tyco Fire Products, LP (i/s/h/a Ansul, Inc. and Tyco International, Ltd.) (collectively, Tyco) are preempted. Accordingly, Tyco's motion for summary judgment should have been granted, and the complaint dismissed as against it.
I.
Plaintiff Peter Malerba was injured during the course of his employment for third-party defendant Ameron Global, Inc. As relevant here, Ameron was responsible for performing maintenance on compressed gas tanks from the fire suppression system of defendants New York City Transit Authority and Metropolitan Transit Authority (collectively, the Transit Authority). Ameron performed this work pursuant to an unwritten agreement with the Transit Authority's contractor, defendants E.A. Technologies, Inc., E.A. Technologies/Petrocelli, and E.A. Technologies/Petrocelli, J.V., LLC (collectively, EA Tech). The cylinder and valve of the compressed gas tank at issue were manufactured by Tyco. As plaintiff worked with the compressed gas tank, it suddenly actuated and struck him, causing severe injuries.
Plaintiffs' amended complaint, which brings direct and derivative claims, asserts five causes of action. The first cause of action, against all defendants, sounds in general and aggravated negligence, including a request for punitive damages. Plaintiff's second cause of action, against Tyco and EA Tech, alleges breach of express warranties that "the fire suppression tanks described[] were safe, effective, fit, capable [*2]and proper for the use and purpose for which they were designed, manufactured and marketed." The third cause of action, against Tyco and EA Tech, alleges breach of implied warranties of "merchantab[ility] pursuant to UCC 2-314 and fit[ness] for the particular purpose for which it was sold pursuant to UCC 2-3 [sic]." As the last direct claim, the fourth cause of action asserts that defendants Tyco and EA Tech are strictly liable based on the "fire suppression tanks['] . . . defective[ness]." The fifth cause of action, on behalf of plaintiff's wife, is a derivative claim for loss of consortium.
In plaintiffs' response to Tyco's interrogatories, plaintiffs alleged, among other things, that the damages suffered were caused by Tyco's negligence in "the design [and] manufacture . . . of the subject fire suppression tank and component parts; . . . in failing to provide instructions and warnings with/for the use of, service, repair and maintenance of the subject fire suppression tank; . . . [and] [i]n selling and putting into use the subject fire suppression tank with manufacturing flaws, design defects and no and/or inadequate warnings." In addition, plaintiffs alleged that Tyco "s[old] [and] distribut[ed] . . . said product with a lack of proper, necessary and appropriate safe guards and warnings."
Following discovery and filing of the note of issue, Tyco moved for summary judgment to dismiss the complaint in its entirety, arguing that plaintiffs' claims were preempted by the HMTA, Tyco breached no duty, Tyco's alleged acts did not cause plaintiff's accident, and plaintiffs' "breach-of-warranty claim" was time-barred.
In opposition to Tyco's motion for summary judgment, plaintiffs argued that the motion should be denied with respect to their negligence and strict liability claims based on defective design and inadequate warnings. First, plaintiffs contended that their claims were not preempted since plaintiff was "akin to an end user," the activity at issue was removed from transportation, "the HMTA does not apply to the subject tank at all and definitely not to the valve assembly," and Tyco waived the defense by raising it for the first time after filing of the note of issue. As to the allegedly inadequate warnings, plaintiffs argued that the valve assembly should have warned of the danger presented by accidental actuation and the absence of safety caps. With respect to the design, plaintiffs argued that the valve should have been more recessed, that a "flimsy rivet" was an insufficient connection for the safety caps, and that the tank did not have a lift ring for handling. Plaintiffs acknowledged, however, that Tyco's motion should be granted with respect to their "[b]reach of [w]arranty [c]laim."
Ameron and the Transit Authority separately opposed Tyco's motion as well. They argued that Tyco waived its preemption, subsequent modification, and unforeseeable misuse defenses because the defenses were raised for the first time after the note of issue[*3]. They further contended that the HMTA does not preempt the claims and that Tyco failed to demonstrate that it did not defectively or negligently design the valve.
In reply, Tyco responded regarding preemption, duty and breach, and causation, and further noted plaintiffs' acknowledgment regarding their "breach-of-warranty claim." Additionally, it argued that the defenses were not waived as they were not required to be affirmatively pleaded under CPLR 3018 (b). Moreover, assuming the defenses had been waived, the waiver was properly "retracted" by motion to amend its answer and, in any event, alternative remedies (besides denial of summary judgment) were available to address potential prejudice while allowing the parties an opportunity to litigate the merits.
Notwithstanding plaintiffs' concession regarding the alleged breach of warranty, Supreme Court denied the motion in its entirety. In a brief decision, Supreme Court held, in pertinent part:
"Viewing the evidence in a light most favorable to the non-moving parties, summary judgment must be denied. There are significant questions of fact that can only be resolved by the trier thereof, including (but not limited to) the HMTA's applicability to the tank at issue, the extent of Tyco's duty to warn, and whether Tyco's design of the tank/valve was defective (especially in light of its competitors' design)."
II.
A.
On appeal, Tyco maintains that plaintiffs' claims are preempted. Specifically, Tyco argues that the plain language of the HMTA's broad express preemption provision (49 USC § 5125 [b]) applies to bar plaintiffs' claims for negligence and strict liability based on defective design and inadequate warnings, which are claims both (1) "about" a proscribed subject area and (2) not "substantively the same" as federal law. In addition, Tyco contends that Supreme Court erred in finding that questions of fact prevented a determination on preemption, as preemption is a pure question of law. Tyco further argues that, because the safety caps would have prevented the accident, a third-party's removal of the caps precludes a finding of causation as a matter of law. Finally, Tyco notes that Supreme Court failed to dismiss plaintiffs' "breach of warranty claim" even though it was conceded.
Plaintiffs argue that their claims are not preempted because the US Department of Transportation (DOT)—the agency tasked with implementing and enforcing the HMTA—did not evaluate, and its certification stamp did not reach or approve, the valve assembly that allegedly caused the accident. Additionally, even assuming the HMTA applies, plaintiffs' "labeling" claim, based on their allegation that there should have been a label indicating that safety caps were always required to be attached, should survive. Plaintiffs further argue, apart from the preemption issue, that Supreme Court properly denied summary judgment on the defective design and inadequate warning claims, as the record raises questions of fact.
The Transit [*4]Authority argues that Tyco's non-preemption defenses were waived and that, even assuming the defenses were not waived, the record supports Supreme Court's denial of summary judgment. Furthermore, like plaintiffs, the Transit Authority contends that the HMTA does not preempt plaintiffs' state law claims. Ameron raises similar points in its brief.
In reply, Tyco reiterates its contention that plaintiffs' claims are preempted, specifically arguing that (1) there is no presumption against preemption; (2) there is no "valve exception" to preemption since the scope of preemption depends only upon the plain language of the preemption provision; (3) there is no "label exception" to preemption; (4) the purported "end-user exception" to preemption has been expressly rejected by numerous courts; and (5) "preemption does not turn on compliance with manufacturing standards, and the record evidence establishes that the tank did comply with such standards." Finally, Tyco argues that it did not waive its defenses and that summary judgment should have been awarded because the record demonstrates the cylinder was substantially modified after it left Tyco's control.
B.
Federal preemption is based on the US Constitution's Supremacy Clause (see Altria Group, Inc. v Good, 555 US 70, 76 [2008] ["Consistent with th[e] command" of US Const, art VI, cl 2, "we have long recognized that state laws that conflict with federal law are 'without effect'"], quoting Maryland v Louisiana, 451 US 725, 746 [1981]; see also State of N.Y. ex rel. Grupp v DHL Express [USA], Inc., 19 NY3d 278, 283 [2012]).
The issue of federal preemption is a question of law (see e.g. Merck Sharp & Dohme Corp. v Albrecht, 587 US 299, 315-318 [2019]), since it concerns whether, as a matter of statutory interpretation (see e.g. id. at 315-316; CSX Transp., Inc. v Easterwood, 507 US 658, 664 [1993]; see also Virginia Uranium, Inc. v Warren, 587 US 761, 767 [2019]), Congress has enacted a law for which a particular state rule is "to the Contrary" (US Const, art VI, cl 2). It is axiomatic that issues of "statutory interpretation" are "question[s] of law for the court" (Village of Freeport v Barrella, 814 F3d 594, 607 [2d Cir 2016]; see Cayuga Indian Nation of N.Y. v Gould, 14 NY3d 614, 635 [2010] ["(A) query concerning the scope and interpretation of a statute" is a "pure question of law"], cert denied 562 US 953 [2010]; Matter of Gruber [New York City Dept. of Personnel-Sweeney], 89 NY2d 225, 231-232 [1996]).
An "inquiry into the scope of a statute's pre-emptive effect is guided by the rule that 'the purpose of Congress is the ultimate touchstone' in every pre-emption case" (Altria Group, Inc., 555 US at 76, quoting Medtronic, Inc. v Lohr, 518 US 470, 485 [1996]; see Grupp, 19 NY3d at 283). "If a federal law contains an express pre-emption clause," as here, "it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains" (Altria [*5]Group, Inc., 555 US at 76).[FN1]
Whether dealing with "express or implied pre-emption, we begin our analysis 'with the assumption that the historic police powers[[FN2]] of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress'" (id. at 77, quoting Rice v Santa Fe Elevator Corp., 331 US 218, 230 [1947]; see Lee v Astoria Generating Co., L.P., 13 NY3d 382, 391 [2009], cert denied 562 US 948 [2010]). "That assumption applies with particular force when Congress has legislated in a field traditionally occupied by the States" (Altria Group, Inc., 555 US at 77; see Balbuena v IDR Realty LLC, 6 NY3d 338, 356 [2006]). "Thus, when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption'" (Altria Group, Inc., 555 US at 77, quoting Bates v Dow Agrosciences LLC, 554 US 431, 449 [2005]).
Notwithstanding the above, "[i]f the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent" (CSX Transp., Inc., 507 US at 664; see Medtronic, Inc., 518 US at 486; Grupp, 19 NY3d at 283 ["There is no plainer indication of preemptive intent than the express language of a statutory provision"]).
Accordingly, although courts will not hesitate to hold that state common-law claims are preempted by federal legislation,[FN3] the analysis in each express preemption case must turn on the precise language of the relevant preemption provision (see e.g. Grupp, 19 NY3d at 283-284; Matter of People v Applied Card Sys., Inc., 11 NY3d 105, 113-118 [2008], cert denied 555 US 1136 [2009]; compare Riegel v Medtronic, Inc., 552 US 312 [2008], with Medtronic, Inc., 518 US 470).
The preemption provision applicable here, 49 USC § 5125 (b) (1), provides as follows in relevant part:
"[A] law . . . of a State . . . about any of the following subjects, that is not substantively the same as a provision [or regulation] under this chapter
. . . , is preempted: . . .
"(E) the designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing a package, container, or packaging component that is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce."
(see 49 USC § 5103 [b] [1] [requiring promulgation of "regulations for the safe transportation, including security, of hazardous material in intrastate, interstate, and foreign commerce"]).
In Buono v Tyco Fire Products, LP, the Second Circuit applied the above provision to the plaintiff's claims for strict products liability and negligence, both "based on failure to warn" (78 F4th 490, 494 [2d Cir 2023]).[FN4] The plaintiff's claims in Buono arose out of injuries caused by a compressed gas cylinder's rupture during a test that involved filling it with [*6]compressed air (id.). Since the pressure gauge did not move, the plaintiff and his colleague continued filling the tank (id.). As his colleague "tinker[ed]" with the tank, the plaintiff "push[ed] down on the valve on [top] of the cylinder with a screwdriver and then turn[ed] the valve on the long metal piece to let the air in" (id.). The tank "then ruptured, and shrapnel hit several fire extinguishers, causing a huge explosion, in which [the plaintiff] lost one of his legs" (id. [quotation marks omitted]).
The Second Circuit identified and applied the plain language of 49 USC § 5125 (b) (1), noting both the "subject-matter requirement," that "the nonfederal law must be 'about' one of the subjects enumerated in § 5125 (b) (1) (A)-(E)" (Buono, 78 F4th at 496-497), and the "substantive-similarity requirement," that "the nonfederal law must not be 'substantively the same as a provision' of the HMTA or an associated regulation" (id. at 497). The Second Circuit concluded that the gravamen of the plaintiff's claims was the defendant's alleged failure to warn of "the risk [that] the tank would explode," and thus the claims were "about" the "marking" of a hazardous materials "package, container, or packaging component" (id. at 498-499). Accordingly, the Court held that the plaintiff's claims were preempted (see id. at 495-500).
Importantly, in Buono, the plaintiff "concede[d] that the tank was qualified for use in transporting hazardous material in commerce under federal law, as it retained DOT markings at all relevant times" (id. at 497 [internal quotation marks omitted]).
C.
Although respondents each argued below that Tyco's preemption defense was waived, the Transit Authority and Ameron on appeal concede that the defense of preemption may be raised at any time. Plaintiffs similarly abandon this argument, omitting any mention of the issue in their brief.
Turning to the merits, as an initial matter, Tyco is correct that there is no "end user" exception to preemption under the HMTA (see Buono, 78 F4th at 500 ["Section 5125 (b) (1) (E) contains no hint that preemption depends on whether a container is in transport or contains hazardous materials at a specific time"]; see also id. at 501 n 4; Common Law Tort Claims Concerning Design and Marking of DOT Specification 39 Compressed Gas Cylinders, 77 Fed Reg 39567-01 at 39570 [2012] [agency's rejection of end user exception]; cf. Kurns v R.R. Friction Products Corp., 565 US at 636-637).
Next, the parties' focus considerably on the question of whether the valve or valve assembly is a part of the "cylinder." Though these arguments plainly aim to frame this case as either aligned with or distinguishable from Buono, this issue is not necessarily dispositive. Rather, given that the applicable statute (49 USC § 5125 [b]) is one providing for express preemption, the correct framing of the issue presented is simply whether the scope of that provision encompasses plaintiffs' claims (see e.g. Medtronic, Inc., 518 US [*7]at 484 [when applying an express preemption provision, "we must nonetheless 'identify the domain expressly pre-empted' by that language"], quoting Cipollone, 505 US at 517).
The statute's reference to "package, container, or packaging component" (49 USC § 5125 [b] [1] [E]) concerns items meant to contain a hazardous substance. Accordingly, as relevant here it applies to an item or component meant to contain compressed gas (see generally Buono, 78 F4th 490 [applying provision to claims "about" the "marking" of a compressed gas cylinder]).
As in Buono, plaintiffs' claims may indeed be properly preempted. For example, in Riegel v Medtronic, Inc., the Supreme Court held that state-law claims for strict liability, breach of implied warranty, and negligence in the design, testing, inspection, distribution, labeling, marketing, and sale of a catheter were preempted by the 1976 federal Medical Device Amendments (MDA) (552 US 312, 321, 330 [2008]). In concluding that such claims were preempted under the plain terms of the MDA's preemption provision,[FN5] the Supreme Court reasoned that "New York's tort duties constitute[d] 'requirements' under the MDA" (id. at 323-324; see id. at 325 ["it is implausible that the MDA was meant to grant greater power (to set state standards different from, or in addition to, federal standards) to a single state jury than to state officials acting through state administrative or legislative lawmaking processes"] [internal citation and quotation marks omitted]).
Inasmuch as the preemption provision here ousts state laws that are merely "about" certain topics (49 USC § 5125 [b] [1]), it is thus considerably broader than the MDA provision in Riegel, which preempted only state laws imposing "requirements" "relate[d] to the safety or effectiveness of the [medical] device" (21 USC § 360k [a]). Accordingly, plaintiffs' claims are subject to preemption to the extent they reasonably implicate an enumerated topic (see Buono, 78 F4th at 497-499; see also Matter of People v Applied Card Sys., Inc., 11 NY3d at 116 [noting U.S. Supreme Court's "caution[] against an uncritical literalism that would make pre-emption turn on infinite connections"], quoting Egelhoff v Egelhoff, 53 US 141, 147 [2001] [internal quotation marks and citation omitted]).[FN6]
Tyco correctly contends that plaintiffs' design defect claim is "about" "the designing [and] manufacturing" of the valves (49 USC § 5125 [b] [1] [E]). Moreover, notwithstanding plaintiffs' attempt to characterize their failure to warn claim as one concerning "labeling," Buono held that warnings fall under covered "marking[s]" (78 F4th at 498-499; see id. at 498 ["A 'marking' thus encompasses 'instructions or warnings' about the potential dangers of a cylinder, including the danger of overfilling"], citing Restatement [Third] of Torts: Products Liability § 2 [c]; id. at 499 ["The ordinary meaning of a 'label' is 'a slip (as of paper or cloth) inscribed and affixed to something for identification or description' [*8]that is 'written or printed . . . to furnish identification or other information'"], quoting Merriam-Webster Dictionary [2023]).
Additionally, it is similarly plain that a cylinder is a "package, container, or packaging component" for hazardous material, a point which goes undisputed in the parties' briefs.[FN7] Furthermore, since a cylinder lacks utility as a package or container for compressed gas without a valve,[FN8] plaintiffs' valve-related claims are subject to preemption under 49 USC § 5125, whether the valve is considered part of the fully-assembled "package [or] container" or as an independent "packaging component."[FN9]
Last, and less straightforward, is whether the valve assembly "is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce" (49 USC § 5125 [b] [1] [E]). Plaintiffs' argument in this respect appears to assume that this clause concerns DOT's inspection and approval, and any required markings attendant thereto. Tyco takes a broader view, arguing that "in selling the valve as part of a packaging that could be used to transport hazardous materials, Tyco necessarily was 'selling' and 'representing' it as a 'packaging component' qualified for use in transporting hazardous materials, even if it was not separately marked."
"Qualified" is defined as "[p]ossessing the necessary qualifications; capable or competent" (Black's Law Dictionary [11th ed. 2019]); "a. fitted (as by training or experience) for a given purpose; b. having complied with the specific requirements or precedent conditions (as for an office or employment)" (Merriam-Webster Online Dictionary, available at https://www.merriam-webster.com/dictionary/qualified); and "having the standard of skill, knowledge, or ability that is necessary for doing or being something" (Cambridge Dictionary, available at https://dictionary.cambridge.org/us/ dictionary/english/qualified). Tyco's interpretation of the provision is thus supported by the plain language, as Tyco "represented" or "sold" the valve as being "capable," being "fit[]," or "having the . . . ability" to be "use[d] in transporting hazardous material in commerce" (49 USC § 5125 [b] [1] [E]).
In comparison, it is useful to consider the consequences of accepting plaintiffs' position (see e.g. King v Time Warner Cable Inc., 894 F3d 473, 477 [2d Cir 2018] ["`If resorting to the plain text alone fails to resolve the question, we test the competing interpretations against both the statutory structure . . . and the legislative purpose'"], quoting Marblegate Asset Mgt., LLC v Education Mgt. Fin. Corp., 846 F3d 1, 6 [2d Cir 2017]; see generally Bank of Am., N.A. v Kessler, 39 NY3d 317, 324 [2023] ["`In a manner consistent with the text, we may look to the purpose of the enactment and the objectives of the legislature. We must also interpret a statute so as to avoid an unreasonable or absurd application of the law'"], quoting Lubonty v U.S. Bank N.A., 34 NY3d 250, 255 [2019]).
Interpreting[*9]"qualified" here as signifying "being appropriately authorized" would exclude from DOT's authority a manufacturer that "design[s], manufactur[es], [etc.]" a "package, container, or packaging component" represented to be capable of transporting hazardous material but not represented to be authorized by relevant authorities including DOT. In other words, a manufacturer engaged in selling insufficiently robust cylinders represented to be, for example, "Excellent for Transporting Compressed Gas Across State Lines!"—without comment regarding DOT approval—would fall outside of DOT's HMTA authority. Given this result, and because Congress enacted the HMTA for the purpose of "protect[ing] against the risks to life, property, and the environment that are inherent in the transportation of hazardous material" (49 USC § 5101), plaintiffs' proposed interpretation is not plausible (see Altria Group, Inc. v Good, 555 US 70, 76 [2008] ["the purpose of Congress is the ultimate touchstone"], quoting Medtronic, Inc. v Lohr, 518 US 470, 485 [1996]).
Plaintiffs' claims sounding in negligence and strict liability based on defective design and inadequate warnings are accordingly preempted as against Tyco (see generally Riegel, 552 US 312). Therefore, plaintiffs' complaint, including the claims for breach of warranties and loss of consortium (see id. [affirming dismissal of implied warranty claim, among others]), should be dismissed as against Tyco.
The parties' remaining contentions, to the extent not rendered moot in view of the above, are unavailing.
Accordingly, the order of the Supreme Court, New York County (Suzanne J. Adams, J.), entered on or about September 11, 2023, which denied defendant Tyco Fire Products, LP's (i/s/h/a Ansul, Inc. and Tyco International, Ltd.) (Tyco) motion for summary judgment dismissing plaintiffs' claims and any counterclaims or cross-claims against it, should be reversed, on the law, without costs, the motion granted, and the complaint dismissed as against Tyco. The Clerk is directed to enter judgment in favor of Tyco accordingly.
Order, Supreme Court, New York County (Suzanne J. Adams, J.), entered on or about September 11, 2023, reversed, on the law, without costs, the motion granted, and the complaint dismissed as against Tyco. The Clerk is directed to enter judgment in favor of Tyco accordingly.
Opinion by Rodriquez, J. All concur.
Singh, J.P., Friedman, Rodriguez, Higgitt, Rosado, JJ. M-617 — Malerba v New York City Transit Authority, et al. Ameron Global, Inc.'s motion to enlarge the record, denied.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 29, 2024

Footnotes

Footnote 1: Beyond express preemption, "[p]re-emptive intent may also be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law" (Altria Group, Inc. at 76-77, citing Freightliner Corp. v Myrick, 514 US 280, 287 [1995]; see Sutton 58 Assoc. LLC v Pilevsky, 36 NY3d 297, 305-306 [2020], cert dismissed — US &mdash, 142 S Ct 53 [2021]).

Footnote 2: "The police powers" of the states are "power[s] which the state did not surrender when becoming a member of the Union under the Constitution. Although this court has refrained from any attempt to define the limits of that power, yet it has distinctly recognized the authority of a state to enact quarantine laws and health laws of every description; indeed, all laws that relate to matters completely within its territory and which do not by their necessary operation affect the people of other states. According to settled principles, the police power of a state must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and the public safety" (Jacobsen v Commonwealth of Massachusetts, 197 US 11, 25 [1905] [internal quotation marks omitted]; see Medtronic, Inc.,518 US at 485 [noting "the historic primacy of state regulation of matters of health and safety"]).

Footnote 3: See e.g. Kurns v R.R. Friction Products Corp., 565 US 625 (2012) (holding state-law claims for defective design and failure to warn pertaining to asbestos products were preempted by the 1915 federal Locomotive Inspection Act); Riegel v Medtronic, Inc., 552 US 312, 321, 330 (2008) (holding state-law claims for strict liability, breach of implied warranty, and negligence in the design, testing, inspection, distribution, labeling, marketing, and sale of a catheter were preempted by the 1976 federal Medical Device Amendments); Buono v Tyco Fire Products, LP, 78 F4th 490 (2d Cir 2023); see also Riegel, 552 US at 324, citing Bates v Dow Agrosciences LLC, 544 US 431 (2005) and Cipollone v Liggett Group, Inc., 505 US 504 (1992).

Footnote 4: Although the parties draw sharply different conclusions regarding Buono's import, they agree that analysis of the preemption issue is governed by Buono to a substantial degree.

Footnote 5: "Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter" (21 USC § 360k [a] [emphasis added]).

Footnote 6: Plaintiffs appropriately decline to argue that their claims are "substantively the same" (49 USC § 5125 [b] [1]) as any provisions under the HMTA (see Buono, 78 F4th at 499-500 ["The HMR defines 'substantively the same' to mean that 'the non-Federal requirement conforms in every significant respect to the Federal requirement. Editorial and other similar de minimis charges are permitted'"], quoting 49 CFR § 107.202 [d]; see id., citing Roth v Norfalco LLC, 651 F3d 367, 377 [3d Cir 2011] [adopting the HMR's interpretation of "substantively the same"]).

Footnote 7: The parties also do not dispute that the cylinder is covered by the HMTA.

Footnote 8: The parties all but conceded this point at oral argument. That a valveless cylinder lacks utility as a package or container for compressed gas is sensible given compressed gas's nature as a substance requiring encapsulation, without which it would become its undecorated counterpart, mere gas. The nature of compressed gas includes an inability to be put to use without a mechanism for filling or release. Indeed, it is difficult to conceive of a process for filling a cylinder with compressed gas absent a valve.

Footnote 9: A component is "a constituent part" (Merriam-Webster Dictionary Online, available at https://www.merriam-webster.com/dictionary/component), and "a part that combines with other parts to form something bigger" (Cambridge Dictionary, available at https://dictionary.cambridge.org/us/dictionary/english/component).