UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2024

(Argued: December 10, 2024    Decided: August 5, 2025)

Docket No. 24-1780

———————————————

DCC PROPANE, LLC,
Plaintiff–Appellant,

v.

KMT ENTERPRISES, INC.,
Defendant–Appellee,

———————————————

Before:      SACK, CHIN, AND ROBINSON, *Circuit Judges*.

Plaintiff-Appellant DCC Propane LLC ("DCC Propane") appeals from a judgment of the United States District Court for the District of Connecticut (Sarala V. Nagala, *Judge*), which granted KMT Enterprises, Inc.'s ("KMT") motion to dismiss, concluding that DCC Propane's Connecticut common-law claims for negligence and recklessness were preempted by the Hazardous Materials Transportation Act ("HMTA"), 49 U.S.C. § 5101 *et seq.*, and, in the alternative, that DCC Propane failed to state a recklessness claim.

We conclude that the HMTA does not preempt DCC Propane's common-law claims because those common-law claims are "substantively the same" as the requirements imposed on hazardous-materials transporters by federal law. We therefore

VACATE the district court's judgment and REMAND for further proceedings consistent with this opinion.

GERALD T. GIAIMO (David J. Monz, *on the brief*), Updike, Kelly & Spellacy, P.C., New

Haven, CT, *for Plaintiff-Appellant DCC
Propane LLC*;

KENNETH R. SLATER, JR. (Thomas A. Plotkin,
Paul D. Meade, *on the brief*), Halloran &
Sage, LLP, Hartford, CT, *for Defendant-
Appellee KMT Enterprises, Inc.*

SACK, *Circuit Judge*:

Plaintiff-Appellant DCC Propane, LLC ("DCC Propane") allegedly suffered significant damage to its property in Putnam, Connecticut, during a delivery of heating oil by Defendant-Appellee KMT Enterprises, Inc. ("KMT"). DCC Propane subsequently sued KMT in the United States District Court for the District of Connecticut for common-law negligence and recklessness under Connecticut law, alleging that KMT negligently and recklessly damaged DCC Propane's property. As evidence of KMT's alleged breaches of its duties of care, DCC Propane cited several Hazardous Materials Regulations ("HMRs"), 49 C.F.R. §§ 171–185, promulgated by the United States Department of Transportation ("DOT") under the Hazardous Materials Transportation Act of 1975 ("HMTA"), 49 U.S.C. § 5101 *et seq.* KMT moved to dismiss DCC Propane's Complaint, arguing that DCC Propane's claims were preempted by the HMTA. The district court (Sarala V. Nagala, *Judge*) granted KMT's motion to dismiss,

2

concluding that, under our decision in *Buono v. Tyco Fire Products, LP*, 78 F.4th 490 (2d Cir. 2023), DCC Propane's claims were preempted by the HMTA. *See DCC Propane, LLC v. KMT Enters., Inc.*, No. 3:23 Civ. 950, 2024 WL 2941635, at *2– 7 (D. Conn. June 11, 2024).

On appeal, we conclude that the HMTA does not preempt DCC Propane's common-law claims of negligence and recklessness against KMT because they would impose no requirement on KMT inconsistent with federal law. For the reasons set forth in further detail below, we therefore **VACATE** the district court's order dismissing DCC Propane's Complaint and **REMAND** the matter for further proceedings consistent with this opinion.

## BACKGROUND

### I. Factual History

The following facts are drawn from the Complaint's allegations, which we accept as true for the purposes of a defendant's Rule 12(b)(6) motion to dismiss. *See Lynch v. City of N.Y.*, 952 F.3d 67, 74–75 (2d Cir. 2020). When evaluating a preemption argument in the context of a motion to dismiss, we view "the factual allegations relevant to preemption . . . in the light most favorable to the plaintiff." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 444 (2d Cir. 2015).

DCC Propane provides oil and propane for residential, agricultural, commercial, and industrial uses.  On February 15, 2022, DCC Propane hired KMT, a trucking business, to deliver 10,000 gallons of No. 2 heating oil to DCC Propane's premises in Putnam, Connecticut.  DCC Propane alleges that, during the delivery, "[t]he KMT employee who was charged with the delivery of the oil did not monitor the filling and sat inside the cab of his truck while the tank overflowed for at least seven minutes."  App'x 10 ¶ 10.  According to DCC Propane, "[t]he overflow of the oil from the tank permeated the ground beneath the tank, contaminating and polluting the soil and groundwater."  *Id.* at 10 ¶ 11. DCC Propane claims that it has incurred and will continue to incur more than $500,000 to remediate the oil-contaminated soil, plus expenses "related to the investigation, defense, and compliance with environmental regulation enforcement."  *Id.* at 11–12.

## II.    Procedural History

DCC Propane filed its Complaint against KMT in the United States District Court for the District of Connecticut on July 19, 2023.  The Complaint contained common-law claims for negligence and recklessness under Connecticut law, with federal jurisdiction premised on the parties' diversity of citizenship.  DCC Propane alleged that KMT acted negligently when it "failed to offload the

4

heating oil with a reasonable standard of care" and cited several HMRs that KMT allegedly violated as evidence of KMT's duties of care and breach thereof. App'x 10 ¶ 12(a). As part of its recklessness count, DCC Propane further alleged that KMT was recklessly indifferent to those same HMRs. The HMRs cited in the Complaint provide that "[a] motor carrier who transports hazardous materials by a cargo tank must ensure that the cargo tank is attended by a qualified person at all times during unloading," 49 C.F.R. § 177.834(i)(2), and that "[t]he qualified person attending the unloading of a cargo tank must be alert and have an unobstructed view of the cargo tank and delivery hose to the maximum extent practicable during the unloading operation," *id.* § 177.834(i)(3)(i).

KMT moved to dismiss the Complaint under Rule 12(b)(6), arguing that (1) the HMTA preempts DCC Propane's common-law claims for negligence and recklessness, and (2) even if the claims are not preempted and the allegations in the Complaint are true, KMT's alleged conduct did not rise to the level of recklessness as a matter of law. On May 10, 2024, the district court held a hearing on KMT's motion to dismiss, *see* App'x 29–68 (hearing transcript), and, on June 11, 2024, granted KMT's motion to dismiss, *see DCC Propane*, 2024 WL 2941635. We discuss the district court's decision further below.

5

## DISCUSSION

We begin by discussing the applicable law before turning to DCC

Propane's arguments on appeal.

### I. Standard of Review

We review *de novo* the district court's grant of a motion to dismiss on a

preemption question. *Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31, 34 (2d Cir. 2020).

"When a federal law contains an express-preemption clause," such as the one at

issue in the HMTA, 49 U.S.C. § 5125, "we focus on the plain wording of the

clause, which necessarily contains the best evidence of Congress' preemptive

intent," *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 594 (2011) (citations and

quotation marks omitted), and do not invoke any presumption against

preemption, *see Buono*, 78 F.4th at 495 (citing *Puerto Rico v. Franklin Cal. Tax-Free

Tr.*, 579 U.S. 115, 125 (2016)).

### II. The Hazardous Materials Transportation Act

In the early 1970s, Congress became concerned that "those who

transported hazardous materials through interstate commerce were forced to

navigate a patchwork of sometimes conflicting state regulations." *Roth v.

Norfalco LLC*, 651 F.3d 367, 370 (3d Cir. 2011) (quotation marks omitted). In 1975,

Congress enacted the HMTA to "protect the Nation adequately against the risks

to life and property which are inherent in the transportation of hazardous materials in commerce." Pub L. No. 93–633, § 102, 88 Stat. 2156, 2156 (1975). A "major purpose of the HMTA was the development of a uniform, national scheme of regulation regarding the transportation of hazardous materials." *CSX Transp., Inc. v. Williams*, 406 F.3d 667, 674 (D.C. Cir. 2005) (Henderson, *J.*, concurring) (quotation marks omitted). In 1990 and 2005, Congress amended the HMTA and expanded upon this objective of promoting uniformity. *See Roth*, 651 F.3d at 370–71 (first citing Hazardous Materials Transportation Uniform Safety Act of 1990, Pub. L. No. 101–615, 104 Stat. 3244, 3244 (1990); and then Hazardous Materials Transportation Safety and Security Reauthorization Act of 2005, Pub. L. No. 109–59, § 7101, 119 Stat. 1144, 1891 (2005)).

The relevant structure of the HMTA is as follows: The HMTA authorizes the Secretary of Transportation to designate certain materials as hazardous and to promulgate appropriate HMRs. *See Buono*, 78 F.4th at 496 (citing 49 U.S.C. § 5103)). The enforcement provision provides that the Secretary of Transportation or Attorney General may bring a civil action in federal court to enforce the HMTA or HMRs, *see* 49 U.S.C. § 5122; there is no federal cause of action for private parties, express or implied, under the HMTA, *see, e.g.*, *Borough of*

*Ridgefield v. N.Y. Susquehanna & W. R.R.*, 810 F.2d 57, 60 (3d Cir. 1987); *accord*

*Alessio v. United Airlines, Inc.*, No. 18-4251, 2019 WL 12631628, at \*2 (6th Cir. June

24, 2019).

Sections 5123 and 5124 of the statute prescribe the required mental states

for civil and criminal liability, respectively, under the HMTA. *See* 49 U.S.C.

§§ 5123–24. Section 5123 provides that "[a] person that knowingly violates this

chapter or a regulation, order, special permit, or approval issued under this

chapter is liable to the United States Government for a civil penalty of not more

than $75,000 for each violation." *Id.* § 5123(a)(1). The statute defines

"knowingly" as either when "the person has actual knowledge of the facts giving

rise to the violation" or "a reasonable person acting in the circumstances and

exercising reasonable care would have that knowledge." *Id.* § 5123(a)(1)(A)–(B).

The criminal-penalty section provides that criminal liability may attach if a

person acts (1) knowingly, defined identically to the two definitions for civil

liability recited above; (2) willfully; or (3) recklessly, defined as "when the person

displays a deliberate indifference or conscious disregard to the consequences of

that person's conduct." *Id.* § 5124.

The "linchpin in Congress' efforts to impose nationwide regulatory uniformity," *Roth*, 651 F.3d at 378, is the HMTA's preemption provision, 49 U.S.C. § 5125, which provides in relevant part that:

> a law, regulation, order, or other requirement of a State, political subdivision of a State, or Indian tribe about [the packing, repacking, handling, labeling, marking, and placarding of hazardous material], *that is not substantively the same* as a provision of this chapter, a regulation prescribed under this chapter, or a hazardous materials transportation security regulation or directive issued by the Secretary of Homeland Security, is preempted.

49 U.S.C. § 5125(b) (emphasis added).

Courts, including ours, have interpreted this language to establish that the HMTA preempts a nonfederal law—including state common law, *see Buono*, 78 F.4th at 499 (citing *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008))—when two conditions are present, *see id.* at 496–97; *accord Roth*, 651 F.3d at 376–77.

First, to be preempted, the nonfederal law must be "about" one of the enumerated subjects in § 5125(b)(1)(A)–(E) (the "subject-matter requirement"). *Buono*, 78 F.4th at 496–97. Section 5125(b)(1) lists the following subjects:

> (A) the designation, description, and classification of hazardous material.

(B) the packing, repacking, handling, labeling, marking, and placarding of hazardous material.

(C) the preparation, execution, and use of shipping documents related to hazardous material and requirements related to the number, contents, and placement of those documents.

(D) the written notification, recording, and reporting of the unintentional release in transportation of hazardous material and other written hazardous materials transportation incident reporting involving State or local emergency responders in the initial response to the incident.

(E) the designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing a package, container, or packaging component that is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce.

49 U.S.C. § 5125(b)(1).

Second, under the "substantive-similarity requirement," a nonfederal law will be preempted if it does not "conform[] in every significant respect to the Federal requirement.  Editorial and other similar *de minimis* changes are permitted."  *Buono*, 78 F.4th at 499–500 (quoting 49 C.F.R. § 107.202(d)). Although the substantive duties imposed by the HMTA and HMRs on hazardous-materials transporters are undoubtedly "federal requirements" relevant to the preemption analysis, *see id.* at 499; *Roth*, 651 F.3d at 376, it is an open question whether, to avoid preemption, the mental states required for state-

law tort claims must be "substantively the same" as the HMTA's enumerated mental states for civil or criminal violations, *see* 49 U.S.C. §§ 5123–5124. For the purposes of this appeal, we assume but do not decide that the mental states under state and federal law must be substantively the same.[1]

---

[1] We note our doubts about this assumption. Section 5125, which governs HMTA preemption, provides in subsection (h) that the "[preemption] section does not apply to any procedure, penalty, *required mental state*, or other standard utilized by a State, political subdivision of a State, or Indian tribe to enforce a requirement applicable to the transportation of hazardous material." 49 U.S.C. § 5125(h) (emphasis added). The carveout for "required mental state[s]" suggests that states may maintain laws enforcing the substantive requirements of the HMTA and HMRs, even if the state law imposes mental states that are not "substantively the same" as those of federal law. In other words, so long as the *duties* incorporated into state law—such as compliance with the HMR—are substantively the same as under federal law, the state law avoids preemption, even if it seeks to impose a distinct, or lesser, mental state than required by the HMTA for civil violations.

There appears to be scant authority interpreting this provision, although the Department of Transportation ("DOT") has issued one relevant preemption determination pursuant to its authority under the HMTA's preemption provision "to decide whether a state or local statute that conflicts with the regulation of hazardous waste transportation is pre-empted." *Wyeth v. Levine*, 555 U.S. 555, 576 n.9 (2009) (citing 49 U.S.C. § 5125(d)). The DOT concluded that the HMTA *did not* preempt the state of Oregon from enforcing a regulation modeled after a federal HMR but including a strict liability standard because § 5125's preemption authority did not extend to a "required mental state . . . used by a state . . . to enforce hazardous material transportation requirements.". *See Hazardous Materials: Oregon Hazardous Waste Management Regulation*, 84 Fed. Reg. 50882-01, 50883, 2019 WL 4671466 (Sept. 26, 2019) (quoting § 5125(h)). KMT contends that this provision applies only to "exemption from preemption of sovereign enforcement actions, with no mention of private lawsuits," such that the state of Connecticut could bring a strict-liability enforcement action for HMR violations, but a private party could not bring a strict-liability lawsuit under Connecticut law. Appellee's Br. at 33. We ultimately need not interpret § 5125(h) because we conclude

11

To summarize, the HMTA preempts a nonfederal law if that nonfederal law (a) is "about" a subject matter enumerated in the HMTA and (b) does not conform in every significant respect to the federal requirements, such as the duties imposed on hazardous-materials transporters by the HMRs.

## III. Analysis

We turn to the parties' arguments on appeal. We note, at the outset, that DCC Propane concedes that its claims meet the subject-matter requirement of the HMTA preemption test,[2] so the sole preemption issue on appeal is whether DCC Propane's claims are substantively the same as the HMTA's requirements. *See* Appellant's Br. at 15–16. If DCC Propane's common-law claims are not substantively the same as the federal requirements, they are preempted. Again, we assume but do not decide that the mental-state elements of DCC Propane's tort claims must be substantively the same as the mental-state elements for civil violations of the HMTA to avoid preemption.

---

that the HMTA's prescribed mental states for civil violations are substantively the same as for DCC Propane's state common-law claims.

[2] Section 5125(b) lists various subjects, including the "packing, repacking, handling, labeling, marking, and placarding of hazardous material." 49 U.S.C. § 5125(b)(1). It is undisputed that DCC's claims are "about" the "handling" of hazardous materials.

A.    *Whether Buono Governs this Appeal*

We must first determine whether *Buono*'s remarks about the HMTA's enumerated mental states for civil violations control our analysis.[3]  We conclude that they do not.

*Buono* principally concerned the first prong of the HMTA preemption test, the subject-matter requirement, rather than the second prong—and the issue now before us—the substantive-similarity requirement.  The plaintiff, Franklin Buono, lost his leg at work when a cylinder tank filled with compressed air exploded. *Buono*, 78 F.4th at 493–94.  Buono brought New York common-law claims for strict liability and negligence against Tyco Fire Products, LP ("Tyco"), which sold the tank to Buono's employer.  *See id.*  In holding that the HMTA preempted Buono's claims, the district court concluded that Buono "conced[ed] tacitly that the duties he seeks to impose are 'not substantively the same' as those imposed by the federal law," *Buono*, 2022 WL 744050, at *6, because Buono's theory of liability would have imposed labeling duties on the defendant beyond those required by federal law, *id.* at *7, *9.

---

[3] The district court in the case before us on appeal relied on *Buono* in holding that DCC Propane's common-law negligence claim was preempted.  *See DCC Propane*, 2024 WL 2941635, at *4.

On appeal, Buono did not contest that he had conceded before the district court that his claims failed to meet the substantive-similarity requirement. *See generally* Brief for Appellant at 28–33, 46, *Buono v. Tyco Fire Prods., LP*, 78 F.4th 490 (2d Cir. 2023) (No. 22-754); *see also* Brief for Appellee at 10, *Buono v. Tyco Fire Prods., LP*, 78 F.4th 490 (2d Cir. 2023) (No. 22-754) (stating that Buono made this concession). Instead, Buono contended that the HMTA's subject-matter requirement for preemption did not apply, arguing, for example, that the tank was not used to transport hazardous materials in interstate commerce. *See* Brief for Appellant at 2, 27, *Buono*, 78 F.4th 490 (No. 22-754).

In affirming the district court, we first resolved the principal issue on appeal by rejecting Buono's arguments that his claims were not "about" one of the HMTA's enumerated subjects. *See Buono*, 78 F.4th at 497–500. We then resolved the appeal in Tyco's favor by holding that Buono's claims also did not meet the substantive-similarity requirement because Buono did "not allege what, if any, provision of the HMTA or HMR is 'substantively the same' as his common-law claims." *Id.* at 500. While we remarked in passing that, "[i]n any event," the mental state required for negligence was different from the HMTA's

14

"knowingly" requirement for civil violations,[4] *id.*, our comment was "not essential to [our] holding . . . and therefore not binding on us [in this appeal]." *Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 243 (2d Cir. 2011). As we ruled in Tyco's favor on the substantive-similarity requirement because Buono failed to argue that his state-law claims were substantively the same as the federal requirements, and the parties neither raised nor briefed whether the HMTA's definition of "knowingly" is akin to a negligence standard, we must therefore turn to DCC Propane's negligence claim and the statutory language of the HMTA afresh. *See Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006) (Although a court's prior observations are often persuasive, a court is "not bound to follow [its] dicta in a prior case in which the point now at issue was not fully debated.").

**B.** *DCC Propane's Negligence Claim*

Turning to the merits of this appeal, we must determine whether the HMTA's definition of "knowingly" is substantively the same as the mental state

---

[4] While the *Buono* Court correctly observed that "a civil violation of the HMTA or HMR must be committed 'knowingly,' 49 U.S.C. § 5123(a)," 78 F.4th at 500, it did not discuss the definitions of "knowingly" or acknowledge that constructive knowledge is included in the statutory definition.

required by a Connecticut common-law negligence claim. We conclude that it plainly is.

The HMTA provides that a person is liable for civil penalties when she "*knowingly* violates this chapter or a regulation, order, special permit, or approval issued under this chapter." *Id.* § 5123(a)(1) (emphasis added). Perhaps counterintuitively, the statute then provides two distinct definitions of when a person acts "knowingly": when "the person has actual knowledge of the facts giving rise to the violation" or "a reasonable person acting in the circumstances and exercising reasonable care would have that knowledge." *Id.* § 5123(a)(1)(A)–(B). The first definition sounds in actual knowledge, rather than negligence, so we must decide whether the second definition of "knowingly" maps onto the meaning of negligence under Connecticut law.

We conclude that the second definition of "knowingly" is "substantively the same" as the required mental state for a common-law negligence claim under Connecticut law. *Compare id.* § 5123(a)(1)(B) ("knowingly" means "a reasonable person acting in the circumstances and exercising reasonable care would have that knowledge") *with Doe v. Saint Francis Hosp. & Med. Ctr.*, 72 A.3d 929, 944 (Conn. 2013) (negligence is "the failure to use reasonable care under the

circumstances," and reasonable care "is the care that a reasonably prudent person would have used in the same circumstances"), *and* Restatement (Second) of Torts § 283 (standard of conduct for an actor to avoid negligence liability is "that of a reasonable [person] under like circumstances"). This definition of negligence is substantively the same as the definition of "knowingly" in § 5125(a)(1)(B) because it "conforms in every significant respect to the Federal requirement." *Buono*, 78 F.4th at 499–500 (quoting 49 C.F.R. § 107.202(d)). Thus, DCC Propane's negligence claim does not seek to impose liability on KMT under a mental state different from that imposed by federal law.

Unlike in *Roth*—a leading HMTA preemption case from the Third Circuit—and *Buono*, DCC Propane's negligence claim escapes preemption because its allegations are premised on violations of a duty of care expressly defined with reference to HMRs, thereby foreclosing any contention that it seeks to impose requirements beyond those provided by federal law.[5] In *Roth*, the Third Circuit held preempted the plaintiff's common-law claims that the court construed to mean that the defendant had a "common law duty to design a safer

---

[5] To emphasize, DCC Propane is not suing under the HMTA, which supplies no private right of action, but is rather suing under Connecticut common law and seeking to introduce the federal standards under the HMRs as evidence of KMT's duties of care.

17

tank car." 651 F.3d at 376. Under the "substantively the same" prong of the HMTA preemption test, the court concluded that the design requirement that the plaintiffs sought to impose—i.e., installation of two safety devices—was not required by the HMTA or HMRs. *Id.* Because the plaintiff's theory of liability would "impose conditions beyond those imposed by the HMR," the plaintiff's claims did "not conform in every significant respect to the federal regulatory scheme." *Id.* at 377. Similarly, in *Buono*, Buono's failure-to-warn claims would have imposed labeling duties beyond those required by federal law, and he did not assert that any provision of the HMTA or HMRs was substantively the same as his common-law claims. 78 F.4th at 500.

Here, in stark contrast, DCC Propane's negligence claim is predicated on KMT's alleged violations of specific HMRs. DCC Propane's Complaint, *see* App'x at 10-11 ¶ 12, alleges that KMT was negligent and cited as evidence of that negligence KMT's alleged violations of 49 C.F.R. § 177.834(i)(2), which requires KMT to "ensure that the cargo tank is attended by a qualified person at all times" while unloading the oil at DCC's property, and 49 C.F.R. § 177.834(i)(3)(iii), which requires that "qualified person" to "be alert and have an unobstructed view of the cargo tank and delivery hose to the maximum extent practicable"

18

during unloading.  DCC Propane's Complaint therefore seeks to recover

damages for negligent violations of common-law duties identical to federal

regulatory duties; as the Supreme Court held in a case involving a similar

express-preemption provision under the Medical Device Amendments of 1976,[6]

"[n]othing in [the preemption provision] denies [a state] the right to provide a

traditional damages remedy for violations of common-law duties when those

duties parallel federal requirements."  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495

(1996); *see also Otis-Wisher v. Medtronic, Inc.*, 616 F. App'x 433, 434 (2d Cir. 2015)

(summary order) (common-law claims survive preemption in this context "if

they constitute so-called 'parallel' claims, such as claims premised on a violation

of [federal] regulations where state law provides a damages remedy for such

violations" (quotation marks omitted)).  The vast majority of federal district

courts to consider whether a plaintiff can bring a tort claim premised on

---

[6] *Compare* 49 U.S.C. § 5125(b)(1) (a state law "about any of the following subjects, that is not substantively the same as a provision of this chapter, a regulation prescribed under this chapter, or a hazardous materials transportation security regulation or directive issued by the Secretary of Homeland Security, is preempted"), *with* 21 U.S.C. § 360k(a) ("[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement (1) which is different from, or in addition to, any requirement applicable under [the act] to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under [the act].").

violations of the HMRs have similarly concluded that that claim is not

preempted.[7]

The DOT's interpretation of the HMTA is consistent with our conclusion.

Pursuant to 49 U.S.C. § 5125(d)(1), a person "directly affected by a requirement of

---

[7] *See, e.g.*, *In re E. Palestine Train Derailment*, No. 23 Civ. 242, 2024 WL 1094616, at *8 (N.D. Ohio Mar. 13, 2024) ("[The plaintiff's] negligence claims . . . are not preempted under federal law because [the plaintiff] alleges that [the defendant] failed to comply with the requirements of the HMTA, and [the plaintiff] does not seek to impose duties on [the defendant] exceeding those requirements.") (footnote omitted); *Merritt v. BASF Corp.*, 21 Civ. 67, 2023 WL 3230983, at *5 (S.D. Ohio May 3, 2023) (denying motion to dismiss "as to claims where an HMTA or HMR violation has occurred" and noting that administrative violations could be evidence of negligence); *Diehl v. CSX Transp., Inc.*, 349 F. Supp. 3d 487, 505 (W.D. Pa. 2018) (rejecting supposition that "complying with both Pennsylvania tort law and a requirement of the HMTA would not be possible or that Pennsylvania tort law 'is an obstacle to accomplishing and carrying out' the HMTA" (quoting 49 U.S.C. § 5125(a)(2)); *Tipton v. CSX Transp., Inc.*, 15 Civ. 311, 15 Civ. 337, 15 Civ. 497, 15 Civ. 346, 2016 WL 11501426, at *15 (E.D. Tenn. July 7, 2016) ("[T]he Court finds that the duties plaintiffs allege [the defendant] negligently violated are substantively the same as those in the HMR, and should not be preempted."); *Henderson v. GATX Corp.*, 9 Civ. 2312, 2012 WL 12905101, at *4 (M.D. Fla. Mar. 22, 2012) (denying defendant's motion for summary judgment on negligence claim because of disputed issues of material fact as to whether the defendant complied with the HMTA and HMR); *Riley v. Ala. Great S. R.R. Co.*, 2 Civ. 1620, 2002 WL 31175209, at *4 (E.D. La. Sept. 27, 2002) (holding that the "[p]laintiffs' state negligence action poses no obstacle to accomplishing or carrying out the prescribed federal regulations [under the HMTA]" if the defendant's products did not comply with federal law); *Ordner ex rel. Ordner v. K-H Corp.*, 74 F. Supp. 2d 150, 156 (D.R.I. 1999) (on the defendant's motion for summary judgment, holding that "[the] [p]laintiffs' design defect claims may proceed to enforce the [HMR], leaving the preemption provisions of § 5125(b) inviolate"). *But see Parrish v. JCI Jones Chems., Inc.*, 17 Civ. 518, 2019 WL 1410880, at *5 (D. Haw. Mar. 28, 2019) (holding that "imposing tort liability on [the defendant] would not be 'substantively the same as' the federal law requirements" because "[t]he HMTA requires that the law be violated 'knowingly' or 'willfully or recklessly,' a higher *mens rea* standard than that required of negligence and strict liability claims.").

a State, political subdivision, or tribe may apply to the Secretary [of Transportation], as provided by regulations prescribed by the Secretary, for a decision on whether the requirement is preempted." Pursuant to this authority, the DOT has stated that the HMTA's "'knowingly' standard in § 5123(a) is akin to a negligence standard," *In the Matter of Mountain States Trailer, Inc.* (DOT No. 1010685), No. FMCSA-2009-0133, 2013 WL 7086986, at *2–3 (Dec. 31, 2013) (applying standard developed in previous DOT decision), and that the HMTA "does not preempt tort claims [alleging] . . . that a person who offered a hazardous material for transportation in commerce or transported a hazardous material in commerce failed to comply with applicable requirements in the HMR," *Common Law Tort Claims Concerning Design and Marking of DOT Specification 39 Compressed Gas Cylinders*, 77 Fed. Reg. 39567, 39570 (July 3, 2012).

The legislative history of the HMTA "puts extra icing on a cake already frosted." *Yates v. United States*, 574 U.S. 528, 557 (2015) (Kagan, *J.*, dissenting); *see also Art & Antique Dealers League of Am., Inc. v. Seggos*, 121 F.4th 423, 432 (2d Cir. 2024) (in a preemption case, "look[ing] to . . . legislative history to confirm our interpretation of the text"). In 1990, when Congress amended the HMTA, it added the present definition of "knowingly" for civil violations. *See* Hazardous

Materials Transportation Uniform Safety Act of 1990, Pub L. No. 101–615, § 12,

104 Stat. 3244, 3259 (1990).  A House Report accompanying the HMTA

amendments stated:

> Section 13 also defines the word "knowingly" to mean that (1) a person has actual knowledge of the facts giving rise to the violation; or (2) a reasonable person acting in the circumstances, exercising due care, would have such knowledge.  Currently, the term is not defined in the HMTA. By including this provision, the Committee intends to cover violations that are committed *negligently* (as well as violations which are committed by persons who have actual knowledge).

H.R. Rep. No. 101–444, pt. 1, at 47 (1990) ((emphasis in original).  Another House

Report noted that "states may maintain and enforce laws, regulations, rules,

standards or orders that are the same as their Federal counterparts."  *Roth*, 651

F.3d at 377 (quoting H.R. Rep. No. 101–444, pt. 2, at 24 (1990)).  This legislative

history suggests that Congress not only intended for the "knowingly" definition

to encompass negligence, but it also contemplated states maintaining and

enforcing their own negligence laws running parallel to the HMRs.

KMT resists this conclusion by arguing that DCC Propane's negligence

claim would undermine the uniformity considerations that are undoubtedly at

the heart of the HMTA preemption scheme.  *See* Appellee's Br. at 41–44; *see also*

*Buono*, 78 F.4th at 496 (describing the purpose of HMTA preemption as promoting "regulatory uniformity"). As an initial matter, we reject the premise that policy considerations can "trump the best interpretation of the statutory text." *Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 90 (2d Cir. 2024) (quoting *Patel v. Garland*, 596 U.S. 328, 346 (2022)). But we reject this argument on the merits, too: as alleged in its Complaint, DCC Propane merely seeks to enforce duties already prescribed by federal law.[8] *See* App'x 10–12, Count One, ¶ 12(c) and (d), and Count Two, ¶ 12(a) and (b). And, as the Supreme Court has observed in other preemption contexts, the "presence of a [state-law] damages remedy . . . merely provides another reason for [defendants] to comply with identical existing 'requirements' under federal law." *Lohr*, 518 U.S. at 495; *see also Drake v. Lab'y Corp. of Am. Holdings*, 458 F.3d 48, 65 (2d Cir. 2006) ("It is difficult to see how state-law remedies for violation of the [federal] regulations would detract from the uniformity of the program or interfere with its effective

---

[8] To the extent that any of DCC Propane's allegations rely on duties not encompassed within the HMRs, such allegations could be preempted. But they would not be preempted because the required mental state under Connecticut law is different from the required mental state for civil violations of the HMTA; rather, they would be preempted if they do not conform to the substantive requirements under federal law, such as the HMRs. We leave the district court to consider that question on remand and as DCC Propane's legal theories develop.

administration."). We therefore see DCC Propane's present suit as wholly consistent with the policies underlying HMTA preemption—namely, uniformity—and conclude that, to the extent DCC Propane alleges that KMT negligently violated the HMTA or HMRs, its negligence claim is not preempted.

**C.**     *DCC Propane's Recklessness Claim*

We next consider whether the HMTA preempts DCC Propane's recklessness claim. Noting that it found "scant authority" on whether the HMTA preempts common-law recklessness claims, the district court looked to the two definitions of "knowingly" required for civil violations—either (1) that a person have "actual knowledge," or (2) that a reasonable person would have such knowledge, *see* 49 U.S.C. § 5123(a)(1)(A)–(B)—and concluded that recklessness is not "substantively the same" as either definition because it "falls somewhere in between those two," *DCC Propane*, 2024 WL 2941635, at *6. Although a common-law recklessness claim would require a *more* culpable mental state than "knowingly" as defined by § 5125(a)(1)(B) of the HMTA (i.e., a negligence standard), the court explained that "[t]he preemption provision of § 5125(b) does not distinguish between requirements that are more or less restrictive than the HMTA or HMR—it excludes from its scope only those requirements that are 'substantively the same.'" *Id.* Even assuming without deciding that we must

24

compare the mental state required for a Connecticut recklessness claim with the defined mental states for *civil violations* of the HMTA under § 5123(a), rather than for criminal violations under § 5124(a),[9] we conclude that the HMTA does not preempt DCC Propane's recklessness claim.

Under Connecticut common law, recklessness is "such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action," *Doe v. Hartford Roman Cath. Diocesan Corp.*, 119 A.3d 462, 483 (Conn. 2015) (citations and quotation marks omitted), and more than mere or even "gross negligence," *Matthiessen v. Vanech*, 836 A.2d 394, 402 (Conn. 2003) (citations and quotation marks omitted). Rather, it is a form of "aggravated

---

[9] Under the HMTA's criminal-penalties section, 49 U.S.C. § 5124, a person may be fined or imprisoned for "*recklessly* violating this chapter or a regulation, order, special permit, or approval issued under this chapter," *id.* § 5124(a) (emphasis added), where "recklessly" is defined as "when the person displays a deliberate indifference or conscious disregard to the consequences of that person's conduct," *id.* § 5124(d). This definition of "recklessly" appears to be substantively similar to a common-law claim of recklessness under Connecticut law, as explained below. *See Doe v. Hartford Roman Cath. Diocesan Corp.*, 119 A.3d 462, 483 (Conn. 2015) (recklessness is "reckless disregard of the just rights or safety of others or of the consequences of the action") (quotation marks omitted) (citations and quotation marks omitted). However, because the parties have failed to raise and brief the question, we decline to decide whether the HMTA's criminal-penalties provision, § 5124, may supply a "substantively the same" mental state for a state tort action. *See DCC Propane*, 2024 WL 2941635, at *7 ("[DCC Propane] does not contend that its claim avoids preemption because it is or could be substantively the same as a *criminal* HMTA claim.").

negligence," *Frillici v. Town of Westport*, 823 A.2d 1172, 1180 (Conn. 2003) (citations and quotation marks omitted), "tend[ing] to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care," *Doe*, 119 A.3d at 483 (citations and quotation marks omitted). Thus, in relation to negligence, the greater includes the lesser: Reckless conduct is necessarily at least negligent.

Because reckless conduct is more severe than negligent conduct, DCC Propane's recklessness claim imposes neither "certain *nonfederal* duties on the defendant," *Buono*, 78 F.4th at 501, nor "conditions beyond those imposed by the HMR," *Roth*, 651 F.3d at 377. As we explained above, a plaintiff may proceed under a common-law tort theory because the HMTA's definition of "knowingly" under 49 U.S.C. § 5123(a)(1)(B) can be akin to a negligence standard. A plaintiff's recklessness claim is similarly not preempted because, for the plaintiff to succeed on that claim, the defendant must have been at least negligent and therefore potentially subject to a federal civil-enforcement action under the HMTA. Indeed, by proceeding with a recklessness theory, DCC Propane is seeking to prove that KMT not only negligently violated the HMRs, but also that it acted with "reckless disregard," a higher standard than that required by federal law.

26

*See* App'x at 11–12, Count Two, ¶ 12 (alleging reckless violations of the HMRs). HMTA preemption therefore poses no obstacle to claims requiring proof of a *more* culpable state of mind than is required to give rise to a violation of federal law.

This conclusion is consistent with the Supreme Court's case law construing a similar express-preemption provision. In *Lohr*, the Court concluded that a Florida tort claim was not "different from"—the language of the preemption provision, 21 U.S.C. § 360k(a)(1)—the Food and Drug Administration's regulations on medical devices, even if Florida tort law required that additional elements be proven for the plaintiff to recover damages. *See* 518 U.S. at 495. Indeed, where a state-law cause of action would make "the state requirements narrower [for the defendant], not broader, than the federal requirement," the narrower state-law requirements "might be 'different from' the federal rules in a literal sense, [but] such a difference would surely provide a strange reason for finding pre-emption of a state rule insofar as it duplicates the federal rule." *Id.*; *see also Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1331 (11th Cir. 2017) ("[E]ven if there are some additional elements that must be proven under Florida law, the claim is not expressly preempted so long as the Florida elements do not implicate

27

any additional requirement on the device itself.").  Here, too, the additional showing of "aggravated negligence" required for a Connecticut recklessness claim makes the state requirements narrower, not broader, for KMT than the federal requirements.  It would make little sense indeed to allow a plaintiff to proceed on a negligence theory, but not a recklessness theory, when the latter is more demanding of the plaintiff.

Thus, a Connecticut recklessness claim is "substantively the same"— meaning it "conforms in every significant respect to the Federal requirement," *Buono*, 78 F.4th at 499–500 (quoting 49 C.F.R. § 107.202(d))—as a civil violation of the HMRs because the plaintiff will have to show *at least* negligent conduct by the defendant.  The HMTA therefore does not preempt DCC Propane's recklessness claim to the extent that it is predicated on KMT's conduct in violation of federal law.  We express no opinion on whether DCC Propane did indeed sufficiently state a claim under Rule 12(b)(6) for recklessness.[10]

---

[10] As noted above, the district court stated that if it concluded that DCC Propane's recklessness claim were not preempted, it would "offer [DCC Propane] an opportunity to amend its complaint to revise its allegations of recklessness."  *DCC Propane*, 2024 WL 2941635, at *7 n.5.  We leave it to the sound discretion of the district court to determine, on remand, whether DCC Propane should be permitted to amend its Complaint.

# CONCLUSION

Based on the foregoing, we conclude that the HMTA does not preempt DCC Propane's common-law claims against KMT for negligence and recklessness premised on KMT's alleged violations of the HMRs. The judgment of the district court is therefore **VACATED**, and this case is **REMANDED** to the district court for further proceedings consistent with this opinion.